## METALLIC SHAFT CO. v. HORTON MFG. CO.

(District Court, D. Connecticut. May 8, 1924.)

No. 1665.

Patents ⟨⟩328—1,125,029, for metallic golf club shaft, held not infringed.

    The Lard patent, No. 1,125,029, for a metallic golf shaft, having a relatively light hollow body, susceptible of torsion and provided with ribs, *held* not infringed by a hollow steel shaft, having the equivalent of one rib only and susceptible of only relatively slight torsion.

In Equity. Suit by the Metallic Shaft Company against the Horton Manufacturing Company. Decree for defendant.

William G. McKnight, of New York City, for plaintiff.

Melville Church and Alexander S. Steuart, both of Washington, D. C., for defendant.

THOMAS, District Judge. This suit is brought to restrain infringement of letters patent No. 1,125,029, granted January 12, 1915, to Allan E. Lard. At the trial the defendant admitted that the plaintiff is now, and since February 5, 1916, has been, the owner of the patent in suit, and conceded its validity; so the only question to be here decided is: Does the defendant infringe?

The invention, says the patentee—

"pertains to an improved shaft for golf clubs, and the main object of the invention is to produce a metallic shaft embodying all the desirable and requisite features of the wooden shaft, and eliminating the objectionable features inherent thereto, namely, breaking, warping, becoming 'dead' or 'set,' and the care and attention necessary during and after exposure to rain."

Claims 5, 6, and 16 are relied upon and are as follows:

"5. As a new article of manufacture, a metallic golf shaft having a relatively light body susceptible of torsion and provided with ribs.

"6. As a new article of manufacture, a metallic golf shaft having a relatively light hollow body susceptible of torsion and provided with ribs."

"16. As a new article of manufacture, a golf shaft comprising a relatively light, tubular member having ribs extending longitudinally thereof, and a wrapping wound around said member."

The metallic type of shaft was well known prior to Lard's invention, as is disclosed by reference to patent No. 976,267, issued November 22, 1910, to Arthur F. Knight. The Knight shaft, however, lacked one of the absolutely essential features necessary to a suitable golf club. It did not twist under impact with the ball on its longitudinal axis; in other words it lacked torsioning qualities under impact, and such torsioning or twisting is as indispensable in a metallic shaft as it is in a wooden shaft. At least, it did not possess sufficient torsion to make it a satisfactory golf club. While it is true that even a solid steel rod has some slight degree of torsion, as was disclosed in tests made at trial, nevertheless there is a certain degree of torsion necessary, which was absent in the Knight shaft.

The face of the head of the golf club is offset or out of line with the shaft. When, therefore, the impact against the ball occurs, the wooden

⟨⟩For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

shaft, not only flexes backwardly, but twists or torsions, a feature especially desirable for a number of reasons.

Lard endeavored to improve upon the steel clubs, by producing a steel or metallic shaft which would combine torsion and other advantages of the wooden shaft and eliminate—

"the objectionable features inherent thereto, namely, breaking, warping, becoming 'dead' or 'set,' and the care and attention necessary during and after exposure to rain." Specifications, p. 1, line 13 et seq.

He also endeavored to produce a metallic shaft which has the necessary "balance" and "weight" of the ordinary wooden shaft.

### The Patented Structure.

Referring to the specification of the patent in suit, it appears that the shaft defined by the claims in suit comprises a central tube, formed, for instance, of spring steel; the same being relatively small and light. This central tube is provided with a plurality of longitudinally extending ribs, which are either attached to the central tube by welding, or they may be made integral therewith. The inventive concept is thus a metallic golf shaft having a relatively light hollow body; that is, a body, the walls of which are thin and light, so that the shaft will torsion or twist on impact with the ball. Inasmuch as such a hollow body is not suitable for a golf club, because of its liability to collapse when subjected to strains and heavy blows, Lard proposed strengthening ribs, in order to convert such hollow body into a stiff, durable golf shaft.

### Defendant's Structure.

The defendant's shaft is a cylindrical tapered tube, formed from flat strip steel, folded up so that the edges meet to form an open butt seam tube. Between the abutting seam edges is inserted the vertical leg of an inverted T-shaped steel brazing strip. The vertical leg is provided with spaced apart ears, which are folded down upon the outer face of the shaft. The horizontal leg of the T-shaped strip, disposed inside the tube, bridges the joint and serves, mainly, to increase the area of brazing surface. The brazing strip itself, although of a material thinner than the material of the tube, and the brazing material, no doubt, form a single longitudinal strengthening rib.

Having determined the invention made by Lard, and disclosed in his patent upon which this suit is brought, and having considered defendant's structure, the meaning of the claims in issue will be determined in the light of the invention and the disclosure of it found in the patent. At the trial it was conclusively proven that a solid steel shaft is susceptible of some slight torsion. This is true, also, of the Knight shaft. When, therefore, the claims specify "a relatively light body susceptible of torsion and provided with ribs," or "a relatively light hollow body susceptible of torsion and provided with ribs," as in claims 5 and 6, or "a relatively light tubular member having ribs," as in claim 16, they can obviously have only one meaning, to wit, a shaft so light that it would be permanently distorted by the application of a twisting force, unless it was provided with stiffening or strengthening ribs.

Taking into consideration the fact that, in describing the several species of his invention, the patentee refers, in conjunction with each of the same, to a 'plurality of strengthening ribs, and particularly calls attention to the fact that a shaft produced in accordance with his specification will have the necessary "balance," it seems clear that the claims must be interpreted as calling for more than one rib, disposed equidistantly on the outer face of the shaft, since otherwise the shaft could not be "balanced." True, the specification says (page 3, line 45):

"It is to be understood that in all the constructions herein set forth a greater or less number of ribs may be employed."

But this must be interpreted to mean that a plurality of ribs—i. e., more than one rib—must be used. Furthermore, I am not satisfied from this record that a single rib would prevent collapsing of the shaft, if it were made so light as to be susceptible of torsion approximating that of hickory shafts.

Placing this interpretation upon the claims, I hold that they are not infringed by defendant's construction, because defendant's shaft has a single rib only, and because it is not susceptible of torsion to the extent as expressed, or in the sense in which that word is used in claims 5 and 6 of the patent in suit, when read in the light of the specification. From the tests made at trial by the defendant's expert, it appears that the defendant's shaft is susceptible of torsioning less than one-sixth of that of hickory shafts, and less than one-fourth of that of plaintiff's shafts.

With reference to claim 16, it appears that the defendant's shaft lacks the wrapping wound around it, and this is an essential element of this claim. Avoiding it, the defendant does not infringe. Having reached this conclusion, it follows that the defendant does not infringe the claims of the patent in suit, and that the bill should be dismissed, with costs to abide the event.

Decree accordingly.